UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL EDWIN FREE,

        Petitioner/Defendant,

v.

UNITED STATES OF AMERICA,

        Respondent/Plaintiff.
_____/

Civil Case Number: 99-CV-73082
Crim. Case Number: 94-80095

HONORABLE AVERN COHN

# ORDER
# DENYING DEFENDANT'S MOTION TO REOPEN CASE
# AND
# DENYING DEFENDANT'S MOTION TO DIRECT THE U.S. MARSHALS TO SEIZE FILES

I.

This is a criminal case. Defendant/Petitioner Paul Edwin Free (hereinafter "defendant") is a federal prisoner serving a life sentence following a jury conviction for conspiracy to possess with intent to distribute and to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and § 846. Before the Court is defendant's motion styled "Motion to Reopen the Case An Independent Action Under Fed. R. Civ. P. 60(b), the All Writs Act, 28 U.S.C. § 1651, and the Court's Inherent Power to Protect the Integrity of the Judicial Process Based on Newly Discovered Evidence of Actual Innocence and Multiple Instances of Fraud Upon the Court - by Officers of the Court." Also before the Court is defendant's motion styled "Motion for Court's Temporary Restraining Order Directing the U.S. Marshals to Seize the Filed Relating to the Prosecution of this Case

Maintained by the Office of the U.S. Attorney, the DEA, the California Department of Justice and Any Other Police Department Associated with This Case." For the reasons that follow, the motions will be denied.

## II.

This case has a long history. In 1995, defendant was convicted by a jury of conspiracy to distribute marijuana. The Court of Appeals for the Sixth Circuit's opinion on direct appeal sets forth the background leading to defendant's conviction as follows:

> In 1993, a California drug dealer, Richard Sumpter, developed contacts with Roberto Huerta and Miquel Ontiveres, who could provide him with large quantities of marijuana from Mexico. Sumpter, in turn, sold the marijuana to Jerome Maddox in Detroit. Moving the marijuana across an international border and then into Michigan presented logistical problems, however, so Sumpter and his suppliers made arrangements to transfer the marijuana from Mexico to California to Detroit through the Defendants.
>
> Defendant Paul Free frequently coordinated the retrieval of marijuana shipments, delivered numerous shipments received from Huerta in Mexico to Sumpter in California.FN1 In July 1993, Free drove a rental truck from San Diego to Detroit to supply Sumpter with 200 pounds of marijuana from Huerta. Sumpter later established a buyer in New York, and in September 1993, Free transported 250 pounds of marijuana from California to New York. Unable to complete the sale in New York, Free then carried the marijuana from New York to Maddox in Detroit, and the sales proceeds back to Sumpter in California.
>
> > FN1. Free facilitated the retrieval of marijuana shipments in the Arizona desert.
>
> Free made two deliveries to Detroit in January 1994. On the first occasion, Free transported 400 pounds of marijuana in a motor home to Maddox's "stash house," and returned to California with $350,000 in cash proceeds. On the next occasion, Free delivered 550 pounds of marijuana in a motor home to Detroit, and then flew back to California.
>
> Defendant Charles Crehore worked as a courier for Free, also transporting marijuana from California to Detroit. In December 1993, Free arranged for Crehore to deliver more than 400 pounds of marijuana to Detroit by motor home. One month later, in January 1994, Free had Crehore pick up a

2

motor home Free previously left in Detroit after completing a delivery.

Defendant Elias Gaitan-Acevedo was a manager in the operation. Gaitan-Acevedo coordinated and supervised the shipments of marijuana from California to Detroit. He often participated in trips to retrieve the marijuana from the Arizona desert, and processed marijuana in California to prepare it for distribution in Detroit and other locations throughout the United States.

Defendant Leonarda Oropeza Arechiga, commonly known as "Leah," recruited, trained, and supervised couriers for the syndicate. Oropeza Arechiga received commissions for loads of marijuana that were delivered by the couriers she recruited.

On January 21, 1994, Gaitan-Acevedo and others gave Douglas Shepherd a load of marijuana at the border. After a brief stop in Hemet, California, where he left two duffel bags of marijuana for Gaitan-Acevedo, Shepherd left for Detroit in a motor home to complete the delivery. On January 25, 1994, *584 law enforcement officers in Illinois stopped Shepherd and discovered 560 pounds of marijuana hidden in duffel bags in the motor home. The officers obtained Shepherd's cooperation, and he continued to Detroit to make a controlled delivery of the marijuana.

While Shepherd was in transit, Sumpter, Curtis Oppedahl, and Defendants Crehore and Gaitan-Acevedo, flew from California to Detroit to meet Shepherd and the shipment of marijuana, and to retrieve the motor home left in Detroit by Defendant Free. Sumpter purchased the airplane tickets for all four of the travelers. When the men arrived in Detroit, they checked into four rooms at the Westin Hotel and waited for Shepherd to arrive. Shepherd and an undercover agent, wearing a monitoring device, went to the Westin Hotel at approximately 12:05 a.m. on January 28, 1994. Gaitan-Acevedo met them in the hotel lobby and escorted them to the room where Sumpter was staying.

After briefly discussing the marijuana shipment that had just arrived from California with Gaitan-Acevedo and Sumpter, Shepherd and the undercover agent left the room, at which time agents from the Drug Enforcement Administration (the "DEA") entered and arrested Sumpter and Gaitan-Acevedo. DEA agents subsequently arrested Crehore in his hotel room, where the agents found marijuana in Crehore's coat pocket and $2,424.60 in cash in a dresser drawer.

Shortly after the arrests in Detroit, law enforcement officers surveilling Sumpter's house in Corondo, California, saw Defendant Free arrive at Sumpter's house, load a suitcase into his pick-up truck, and then drive away. Officers arrested Free as he drove away from the residence. When the arresting officers opened the suitcase, they discovered $60,000 in cash and two semi-automatic handguns.

United States v. Gaitan-Acevedo, 148 F.3d 577, 583-84 (6th Cir. 1998).

Defendant filed a direct appeal, raising several issues, as follows:

1. whether the district court erred in admitting co-conspirator Richard Sumpter's testimony regarding his fear of defendants,

2. whether the district court erred in admitting an 11-page summary exhibit, exhibit 41(b), depicting the results of an analysis of voluminous telephone toll records,

3. whether the district court erred in admitting evidence that, after he was arrested and released in January of 1994, defendant fled to Mexico,

4. whether the district court abused its discretion by allowing a witness, Robert Lillie, to refuse to testify by invoking his Fifth Amendment right against self-incrimination when defendant attempted to call him as a defense witness the following day,

5. whether the district court erred in denying his motion for a new trial premised upon newly discovered evidence. Specifically, defendant argued that a member of the conspiracy, Antonio Diaz, who did not testify at trial, indicated at the end of the trial, after his plea was taken, that the person named "Paul," who went to Arizona to pick up marijuana, was not in fact defendant.

The Sixth Circuit affirmed defendant's conviction. United States v. Gaitan-Acevedo, 148 F.3d 577 (6th Cir. 1998).

In 2000, defendant filed a motion under § 2255 claiming that: (1) trial counsel provided ineffective assistance; (2) the trial judge abused his discretion by denying petitioner's request for new counsel prior to trial; (3) the trial was fundamentally unfair; (4) a witness committed perjury at trial; (5) the admission of petitioner's prior felony drug conviction at sentencing violated his right to due process; (6) the trial judge fell asleep during trial; and (7) the prosecutors engaged in misconduct.

The matter was referred to a magistrate judge for a report and recommendation

(MJRR). The magistrate judge carefully considered all of petitioner's claims on the merits and recommended that defendant's motion be denied. See MJRR dated July 11, 2000. Defendant's counsel and defendant separately filed objections. Petitioner then moved to amend his motion to raise a claim that his sentence violates Apprendi v. New Jersey, 530 U.S. 466 (2000), which was granted.

The Court agreed with the magistrate judge's analysis and conclusion regarding defendant's claims pertaining to his conviction and denied defendant's motion to the extent that he sought to have his conviction vacated. The Court, however, found that Apprendi applied to defendant's case,[1] that the claim warranted a closer review, and remanded the case to the magistrate judge for a supplemental report and recommendation with respect to defendant's sentence in light of Apprendi. See Order filed August 13, 2001.[2]

The magistrate judge has issued a Supplemental MJRR recommending that defendant's Apprendi claim be denied because although at the time the Court found that Apprendi applied to defendant, the Sixth Circuit had not yet ruled on whether Apprendi applied retroactively to initial § 2255 motions, the Sixth Circuit subsequently ruled that it does not. Goode v. United States, 2002 WL 987905 (6th Cir. May 10,

---

[1] In ruling that Apprendi applied to Petitioner, the Court followed the decision from another judge in this district holding that Apprendi applies retroactively to initial § 2255 motions. See Order filed August 13, 2001 at p. 5 (citing Jackson v. United States, 129 F. Supp. 2d 1053 (E.D. Mich. 2000)).

[2] Thereafter, Petitioner filed a Notice of Appeal, seeking to appeal the portion of the Court's August 13, 2001 Order denying him § 2255 relief and the Court's October 10, 2001 Order denying his motion for reconsideration. The Court issued an order denying a certificate of appealability. See Order Denying Certificate of Appealability, filed October 31, 2001.

2002)(unpublished). Thus, the magistrate judge recommended that defendant's claim be denied based on Goode. Alternatively, the magistrate judge found that even if Apprendi applied, defendant was still not entitled to relief because he was not prejudiced for the failure to submit the issue of drug quantity to the jury, based on the evidence of drug quantity adduced during the trial which was more than sufficient to subject defendant to a life sentence. Defendant objected to the supplemental MJRR, arguing that whether Apprendi applies retroactively is still an open question and urges the Court to apply it to defendant's case. The Court denied the objection and adopted the MJRR. See Order filed July 12, 2002. The Court denied a certificate of appealability. See Order filed December 16, 2002. Defendant appealed. The Sixth Circuit declined to issue a certificate of appealability. See Order in Case Nos. 03-1077, 03-2093, filed January 9, 2004.

On April 24, 2008, defendant filed the instant motion. The Court directed the government to file a response, which it did. Defendant filed a reply. The matter is now ready for decision.

III.

Although defendant cites several grounds of authority for his motion, the motion is properly construed as a motion under Fed. R. Civ. P. 60(b) asking the Court to vacate its order denying § 2255 relief and/or reopen his case on the grounds that there has been a fraud upon the Court and defendant is actually innocent. Defendant thus raises an independent action for fraud upon the court. In order to succeed, defendant is required to prove five elements: (1) conduct by an officer of the court (2) that is directed towards the judicial machinery itself, (3) that is intentionally false, wilfully blind to the

6

truth or is in reckless disregard for the truth, (4) that is a positive averment or concealment when one is under a duty to disclose and (5) that deceives the court. Workman v. Bell, 484 F.3d 837, 840 n. 1 (6th Cir. 2007). "Independent actions must . . . be reserved for those cases of 'injustices which, in certain instances, are deemed sufficiently gross to demand a departure' from rigid adherence to the doctrine of res judicata." United States v. Beggerly, 524 U.S. 38, 46 (1998) (quoting Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944). See also Charter Tp. of Muskegon v. City of Muskegon, 303 F.3d 755, 760 (6th Cir. 2002).

IV.

As the government points out, defendant raises many of the same issues raised on direct appeal and in his §2255, essentially arguing that they have been wrongly decided. As explained below, none of his reasserted claims constitute a fraud upon the court.

Defendant in particular says that he was not the "Paul" who committed the crimes, referencing the fact that Antonio Diaz was not called to support his claim. Defendant raised the issue of Diaz's testimony in a motion for new trial which the district court denied. He also raised the issue on appeal, which was rejected, and in his § 2255 motion. Defendant's repetition of the same argument of mis-identification does not establish that a fraud was committed on the court.

Defendant also says he is actually innocent because he has an alibi that he was a student taking classes at San Diego State University instead of trafficking in marijuana and based on hotel records. Defendant raised these issues in his § 2255 motion. The magistrate judge found the claim relating to being a student did not warrant relief

7

because records of his college enrollment were admitted at trial. Defendant also says that hotel records show he could not have been in two places at once. In his § 2255, the magistrate judge noted that this defense was made at trial, the hotel records were introduced, and the case agent examined on the alleged inconsistency. The fact that the jury rejected defendant's alibi defense is not grounds for fraud upon the court.

Defendant again raises the issue regarding a co-conspirator's testimony, Robert Lillie, who invoked his Fifth Amendment right at trial. This was raised and rejected on direct appeal and in his § 2255 motion. Defendant does not offer any new evidence or analysis of this issue.

Defendant also says he was entitled to a hearing on his claim raised in his § 2255 that the trial judge fell asleep. The magistrate judge noted that collateral review of this claim was barred. Defendant does not allege any fraud associated with this claim, but rather disagrees with the fact it has been rejected.

Defendant's Apprendi claim, which he again raises, has been rejected as fully explained above.

The only possible question of fraud presented in defendant's motion relates to his co-defendant, Charles Crehore, regarding an inadvertent error the government made in its brief on appeal regarding linking Crehore to a post-arrest load of marijuana based on certain false statements. Crehore raised this issue before the Court in a Rule 60(b) motion, which the Court denied. Crehore appealed the denial. The Sixth Circuit affirmed, noting that the mistake was called to the attention of the original panel on direct appeal, who declined to withdraw the mandate. The government also did not rely

8

on the false statements in arguing that the load was properly attributable to Crehore in Crehore's § 2255 proceeding. See Crehore v. United States, No. 06-2110 (6th Cir. Nov. 7, 2007). Thus, Crehore has not obtained relief based on this allegation of fraud. More significantly, defendant was unaffected by the error. As the Sixth Circuit stated in defendant's direct appeal, defendant was held responsible for 11 loads of marijuana which totaled, using "extremely conservative estimates," 1756 kilograms of marijuana. Gaitan-Acevedo, 148 F.3d at 595.

Defendant also appears to seek to raise a number of new claims, regarding his sentence, that prison guards destroyed his legal mail, regarding the fact that many states have passed medical marijuana laws. None of these claims constitute a valid ground for reopening his § 2255 litigation, or any aspect of his case.

IV.

Defendant has devoted numerous pages to attacks on the prosecutor and the magistrate judge who presided over his § 2255 proceedings, but he fails to allege a single instance of fraudulent conduct by the government in the litigation of his § 2255 motion. Defendant instead reargues claims raised on direct appeal and in his §2255 proceedings, as well as seeks to raise new claims, none of which constitutes a fraud upon the court. Accordingly, there is no basis to reopen or grant defendant relief relative to his § 2255. The motion is DENIED.

Finally, defendant's motion to have the marshals seize the government's files is

DENIED for lack of merit.

SO ORDERED.

                                                        s/Avern Cohn
                                                        AVERN COHN
                                                        UNITED STATES DISTRICT JUDGE

Dated: July 7, 2008

I hereby certify that a copy of the foregoing document was mailed to Paul Free, #42235-198, USP Atwater, U.S. Penitentiary, P.O. Box 019001, Atwater, CA 95301 and the attorneys of record on this date, July 7, 2008, by electronic and/or ordinary mail.

                                                        s/Julie Owens
                                                       Case Manager, (313) 234-5160